**ORAL ARGUMENT NOT YET SCHEDULED**

---

**No. 24-7154**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**CHERYL WALKER,**
*Plaintiff-Appellee*,

v.

**UBER TECHNOLOGIES, INC. et al.,**
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Columbia, Case No. 1:23-cv-03976
The Honorable Amit P. Mehta, United States District Judge

---

# APPELLANTS' REPLY BRIEF

---


Jacob Taber
PERKINS COIE LLP
1155 Sixth Avenue, 22nd Floor
New York, NY 10036
Telephone: 212.261.6907
JTaber@perkinscoie.com

Jonathan I. Tietz
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 800
Washington, D.C. 20005-3960
Telephone: 202.942.8667
JTietz@perkinscoie.com

Michael R. Huston
PERKINS COIE LLP
2525 East Camelback Road
Suite 500
Phoenix, AZ 85016
Telephone: 602.351.8000
MHuston@perkinscoie.com

*Attorneys for Uber Technologies, Inc., Rasier, LLC, and Rasier-DC, LLC*


October 15, 2025

## TABLE OF CONTENTS

**Page**

Table of Authorities ........ iii

Glossary ........ viii

Introduction ........ 1

Standard of Review ........ 2

Argument ........ 3

I. Mr. Walker agreed to Uber's terms of use. ........ 3

A. Under the inquiry-notice test, actual notice of the terms is not required to form a contract. ........ 3

B. The bright-blue link in the text message sent to Mr. Walker close in time to his ride objectively provided conspicuous notice. ........ 9

C. Carroll was told that taking a ride meant agreeing to the Terms, and he manifested his assent by doing so. ........ 13

D. The district court abused its discretion in denying reconsideration. ........ 14

II. Mr. Walker's claims are arbitrable under traditional contract-law principles applicable to non-signatories. ........ 18

A. An arbitration agreement is enforceable in D.C. where a non-signatory received the benefit of the contract. ........ 18

B. Plaintiffs' forfeiture argument ignores Uber's consistent argument that Carroll sought the benefit of his wife's agreement. ........ 20

C. Carroll was an intended beneficiary who sought to benefit from his wife's agreement with Uber. ........ 23

Conclusion ........ 27

Certificate of Compliance

Certificate of Service

## Table of Authorities

**Page(s)**

**Cases**

*Abdulwali* v. *WMATA*,
315 F.3d 302 (D.C. Cir. 2003) .......... 16, 17

*Aliron Int'l, Inc.* v. *Cherokee Nation Indus., Inc.*,
531 F.3d 863 (D.C. Cir. 2008) .......... 2

*Apprio, Inc.* v. *Zaccari*,
104 F.4th 897 (D.C. Cir. 2024) .......... 22

*Bazemore* v. *Jefferson Capital Systems, LLC*,
827 F.3d 1325 (11th Cir. 2016) .......... 10

*Bean* v. *Perdue*,
316 F.Supp.3d 220 (D.D.C. 2018) .......... 6

*Bradley* v. *NCAA*,
249 F.Supp.3d 149 (D.D.C. 2017) .......... 19

*Camara* v. *Mastro's Restaurants LLC*,
952 F.3d 372 (D.C. Cir. 2020) .......... 13, 14

*Carter* v. *Ralph Lauren Corp.*,
683 F.Supp.3d 400 (S.D.N.Y. 2023) .......... 11

*Charlton* v. *Mond*,
987 A.2d 436 (D.C. 2010) .......... 19

*Clarian Health West, LLC* v. *Hargan*,
878 F.3d 346 (D.C. Cir. 2017) .......... 22

*Cobell* v. *Jewell*,
802 F.3d 12 (D.C. Cir. 2015) .......... 16, 17

*Cullinane* v. *Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018) .......... 11

*Domer* v. *Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) .......... 8

*Estate of Fulton* v. *Fulton-Jones*,
287 A.3d 253 (D.C. 2023) .......... 7

**Page(s)**

*Forrest* v. *Verizon Commc'ns, Inc.*,
805 A.2d 1007 (D.C. 2002) .................................................. 3

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*,
944 A.2d 1055 (D.C. 2008) .................................................. 19

*Freitas* v. *Cricket Wireless, LLC*,
No. 19-cv-7270, 2022 WL 1082014
(N.D. Cal. Apr. 11, 2022) .................................................. 7

*General Ass'n of Regular Baptist Churches* v. *Scott*,
549 F. App'x 531 (7th Cir. 2013) .................................................. 17

*Good* v. *Uber Techs., Inc.*,
234 N.E.3d 262 (Mass. 2024) .................................................. 6

*Guam Industrial Services, Inc.* v. *Rumsfeld*,
441 F.Supp.2d 21 (D.D.C. 2006) .................................................. 24

*Guttenberg* v. *Emery*,
41 F.Supp.3d 61 (D.D.C. 2014) .................................................. 19

*Hamilton* v. *Uber Techs., Inc.*,
No. 22-cv-6917, 2023 WL 5769500 (S.D.N.Y. Sept. 7, 2023) ............. 23

*Harris* v. *Med. Transp. Mgmt., Inc.*,
317 F.Supp.3d 421 (D.D.C. 2018) .................................................. 4

*Hartenstine* v. *Uber Techs., Inc.*,
753 F.Supp.3d 1 (D.D.C. 2024) .................................................. 20, 24

*Harvey ex rel. Gladden* v. *Cumberland Tr. & Inv. Co.*,
532 S.W.3d 243 (Tenn. 2017) .................................................. 21

*Hines* v. *Overstock.com, Inc.*,
668 F.Supp.2d 362 (E.D.N.Y. 2009) .................................................. 12

*Hossain* v. *JMU Properties, LLC*,
147 A.3d 816 (D.C. 2016) .................................................. 25

*Hughes* v. *Uber Techs., Inc.*,
718 F.Supp.3d 571 (E.D. La. 2024) .................................................. 24

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**


*Irvine* v. *Destination Wild Dunes Mgmt., Inc.*,
132 F.Supp.3d 707 (D.S.C. 2015)........................................................4

*Jacks* v. *CMH Homes, Inc.*,
856 F.3d 1301 (10th Cir. 2017)........................................................26

*Jahanbein* v. *Ndidi Condominium Unit Owners Ass'n*,
85 A.3d 824 (D.C. 2014)........................................................18, 20

*Jazz Pharms., Inc.* v. *Kennedy*,
141 F.4th 254 (D.C. Cir. 2025)........................................................22

*Jin* v. *Parsons Corp.*,
966 F.3d 821 (D.C. Cir. 2020)........................................................2

*Jones Lang LaSalle Americas, Inc.* v. *NLRB*,
128 F.4th 1288 (D.C. Cir. 2025)........................................................22

*Jones* v. *Quintana*,
872 F.Supp.2d 48 (D.D.C. 2012)........................................................19, 23

*Kauders* v. *Uber Techs., Inc.*,
159 N.E.3d 1033 (Mass. 2021)........................................................6, 14

*Kelleher* v. *Dream Catcher, L.L.C.*,
263 F.Supp.3d 253 (D.D.C. 2017),
*aff'd*, 729 F. App'x 4 (D.C. Cir. 2018)........................................................17

*Koch* v. *Cox*,
489 F.3d 384 (D.C. Cir. 2007)........................................................18, 22

*Maalouf* v. *Islamic Republic of Iran*,
923 F.3d 1095 (D.C. Cir. 2019)........................................................12, 15, 16

*Macasero* v. *ENT Credit Union*,
533 P.3d 982 (Colo. App. 2023)........................................................8

*Marie* v. *Allied Home Mortgage Corp.*,
402 F.3d 1 (1st Cir. 2005)........................................................17

*Marshall* v. *Georgetown Mem'l Hosp.*,
112 F.4th 211 (4th Cir. 2024)........................................................14

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**


*Meyer* v. *Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .................................................................. 5

*Nguyen* v. *Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ............................................................ 21

*Oehme, van Sweden & Associates, Inc.* v. *Maypaul Trading & Services Ltd.*,
902 F.Supp.2d 87 (D.D.C. 2012) ......................................................... 21

*Patel* v. *Regions Bank*,
808 F. App'x 242 (5th Cir. 2010) ......................................................... 21

*Patrick* v. *Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ................................................................. 8

*Schnabel* v. *Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) ........................................................... 4, 5, 6

*Selden* v. *Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021) ................................................ 3, 4, 10, 11

*Sexton* v. *Xerox Corp.*,
No. 24-cv-188, 2024 WL 4201186 (D. Haw. Sept. 16, 2024) ................ 5

*Specht* v. *Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) .................................................................. 12

*Starkey* v. *G Adventures, Inc.*,
796 F.3d 193 (2d Cir. 2015) ............................................................... 5, 8

*Towns* v. *West Creek Financial, Inc.*,
No. 22-cv-1757, 2023 WL 7490007 (E.D. Cal. Nov. 13, 2023).............. 7

*United States* v. *Dynamic Visions Inc.*,
971 F.3d 330 (D.C. Cir. 2020) ............................................................. 10

*United States* v. *Sineneng-Smith*,
590 U.S. 371 (2020).............................................................................. 12

*Wilson* v. *Redbox Automated Retail, LLC*,
448 F.Supp.3d 873 (N.D. Ill. 2020)........................................................ 7

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Yee* v. *City of Escondido, Cal.*,
503 U.S. 519, 534 (1992) .......... 18, 22

### STATUTES

9 U.S.C. § 4 .......... 2

### RULES

Fed. R. App. P. § 4(a) .......... 17
Fed. R. Civ. P. § 54(b) .......... 18
Fed. R. Civ. P. § 58 .......... 17
Fed. R. Civ. P. § 58(a) .......... 16
Fed. R. Civ. P. § 59 .......... 14, 16–18

## GLOSSARY

| | |
|---|---|
| AAJ.Br.__ | amicus brief of American Association for Justice (Doc. 2133111) at page __ |
| FAA | Federal Arbitration Act |
| Gaddis Decl. | Declaration of Todd Gaddis, R.9-2 (JA089–094) |
| JA__ | joint appendix at page __ |
| R.__ | district court docket entry __ |
| Resp.Br.__ | Apellee's response brief at page __ |
| Terms | Uber's terms of use dated January 18, 2021, R.9-3 at 27–39 (JA121–133) |
| Uber.Br.__ | Uber's opening brief at page __ |

## INTRODUCTION

This case involves two anchoring principles of an effective contract-law system. The first is that contract formation is judged from the perspective of a *reasonable* person—not the idiosyncratic assertions of a plaintiff who claims to be willfully blind to receiving communications about the services he uses. The second principle is that a person cannot accept the benefits of consumer services while shirking the obligations that come with them. Both principles are necessary to implement reasonable expectations in commerce. Plaintiffs ask this Court to cut both anchors loose, but it should stay moored.

Mr. Carroll Walker objectively agreed to Uber's Terms of Use under the inquiry-notice standard when, after being *reasonably* informed that taking a ride would manifest his acceptance to the Terms, he did so. This Court should reject Plaintiffs' arguments to the contrary. *First*, Plaintiffs err by all-but-ignoring the objective inquiry-notice standard. Carroll's claim to willful blindness cannot defeat contract formation. *Second*, Plaintiffs' arguments that Uber's text message was inconspicuous cannot be reconciled with *any* conception of how that message looked or arrived. *Third*, reconsideration should have been granted because the district court improperly decided issues no one raised—a fact that Plaintiffs do not dispute.

Even if Carroll did not consent to the Terms, traditional contract principles prevent him, as the intended third-party beneficiary of his

wife's agreement with Uber, from seeking the benefit of that contract (Uber's services) while avoiding its obligations. Plaintiffs argue that D.C. law does not *ever* allow contract enforcement against third parties. But it does where the party sought and obtained the contract's benefit. Plaintiffs' forfeiture arguments fail because Uber advanced the same essential point below. Last, Plaintiffs argue that this Court should reward Carroll's breach of contract by finding that his refusal to arbitrate is a "reject[ion]" of the "benefit" of the Terms. But the benefit that Carroll accepted was the ride arranged through Uber, not his dispute-resolution options.

The district court's decision should be reversed.

## STANDARD OF REVIEW

Clear-error review does not apply here. *Contra* Resp.Br.11–12. This Court conducts de novo review, applying the summary judgment standard. *Aliron Int'l, Inc.* v. *Cherokee Nation Indus., Inc.,* 531 F.3d 863, 865 (D.C. Cir. 2008). The district court also applied the summary-judgment standard. If a district court concludes that a fact dispute exists as to formation of an arbitration agreement, it must hold a trial on arbitrability. 9 U.S.C. § 4; *see Jin* v. *Parsons Corp.*, 966 F.3d 821, 826–827 (D.C. Cir. 2020). It cannot find facts based solely on the papers. None of Plaintiffs' out-of-circuit cases (Resp.Br.11–12) applied the clear-error standard to the existence of an agreement. None even mentioned the summary judgment standard that applies in this procedural context.

## ARGUMENT

### I. Mr. Walker agreed to Uber's terms of use.

#### A. Under the inquiry-notice test, actual notice of the terms is not required to form a contract.

It is vital to a stable contract-law system that parties cannot accept benefits and later dodge their contractual obligations by denying having read the agreement. The law thus provides that the key to contract formation is whether the consumer had *inquiry* notice of the Terms—not actual notice. Uber.Br.23–25. That standard asks whether "*reasonable people* in the position of the parties would have known about the terms and the conduct that would be required to assent to them," *Selden* v. *Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021) (emphasis added), not whether this particular party actually knew. A reasonable person who received a text message containing a link to Uber's Terms and explaining how to accept them—in the same message that provided the car and driver information to the user—had both reason and opportunity to review those terms.

Plaintiffs do not dispute that Carroll "ha[d] an opportunity to read" the Terms. *Forrest* v. *Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010 (D.C. 2002). Instead they insist (Resp.Br.18) that the law demands proof that he "opened[] or viewed" the message—*actual* notice. *See also* Resp.Br.17 ("Carroll could not have contracted to arbitrate unless he knew he was doing so…"). But that is not the law. The Court in *Selden*, for example,

rejected the plaintiff's argument that he did not actually know the words "Terms of Service" were a hyperlink because the text was red rather than blue, because a reasonable user would not have been flummoxed. *See* 4 F.4th at 157–158. Moreover, *Schnabel* v. *Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012), does not demand actual knowledge, *contra* Resp.Br.17–18, but confirmed that a company need only "make clear to a *reasonable* consumer" that "terms are being presented." 697 F.3d at 123 (cleaned up and emphasis added). What matters is not whether the message was "opened, or viewed by Carroll," Resp.Br.18, but whether it would have been viewed by a *reasonable* consumer.[1]

Plaintiffs' assertion (Resp.Br.18–19) that the text message is too "inconspicuous" to put a reasonable person on inquiry notice is also wrong. The undisputed evidence makes clear that Uber informs guest riders of the details of their ride by text. A reasonable person waiting for a ride from an unknown driver of an unknown vehicle would check his

---

[1] Plaintiffs also assert (Resp.Br.18) that Uber produced no evidence that the text message was received. That is incorrect. Cheryl supplied Carroll's phone number when she requested the ride—she would not have done so if he could not receive communications. JA092–093. Uber having undisputedly sent the text message is further circumstantial evidence that it was received. So is the fact that Uber sends such texts repeatedly in the ordinary course of business. *See* JA089–090, JA092–093 ¶¶ 3, 15–17; JA160–161. Text messaging is so reliable that courts regularly approve it to provide class notice. *E.g.*, *Harris* v. *Med. Transp. Mgmt., Inc.*, 317 F.Supp.3d 421, 426 (D.D.C. 2018); *Irvine* v. *Destination Wild Dunes Mgmt., Inc.*, 132 F.Supp.3d 707, 711 (D.S.C. 2015).

device to learn which car to get into. Upon seeing that text message—which was essential to the use of Uber's services—a reasonable person would see a clear reference to the Terms and their manner of acceptance. *See Schnabel*, 697 F.3d at 123. Plaintiffs ask the Court to follow *Sexton* v. *Xerox Corp.*, No. 24-cv-188, 2024 WL 4201186 (D. Haw. Sept. 16, 2024), but that case *rejected* the inquiry-notice standard that applies here, as a matter of Hawaii law. *Id.* at *4.

Plaintiffs repeat their error by arguing (Resp.Br.19–20) that Carroll needed "actual notice of the contents of the text message." As explained above, the inquiry notice test does not require a person to read before manifesting his assent—it requires only "actual notice of circumstances sufficient to put a prudent [person] upon inquiry." *Schnabel*, 697 F.3d at 120; *see also* Resp.Br.19 (inquiry notice requires "*actual* notice of something that would alert [Carroll] to read [the Terms]"). Carroll had that: a ride was requested for him and he received a text about it. No reasonable person would ignore the text and hope that blind luck directed him to the right car and driver. A text message sent at the scheduled pickup time—communicating clearly both the Terms and their method of assent—is as conspicuous as the vacation-booking information email in *Starkey* v. *G Adventures, Inc.*, 796 F.3d 193, 195 (2d Cir. 2015), which was sent "shortly" after booking provided a hyperlink to the terms and conditions. In both cases, the notice was "temporally coupled" to the transaction. *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017); *cf.*

*Schnabel*, 697 F.3d at 127 (declining to enforce agreement that "was both temporally and spatially decoupled from the plaintiffs' enrollment in" defendant's service). Plaintiffs contend (Resp.Br.25–26) that it would be wrong to assume "any text sent is read *within 10 minutes* of receipt." But that temporal proximity is precisely what supports notice.

Plaintiffs say (Resp.Br.27–28) that a "reasonable person" would not "expect" Uber to send "binding contract terms" to a guest rider. But it is common sense that commercial transportation services are almost always offered subject to terms outlining the rights and the responsibilities of the service provider and the customer. A reasonable person *would* expect some to attach. Contrary to Plaintiffs' suggestion (Resp.Br.28), *Kauders* v. *Uber Technologies, Inc.*, 159 N.E.3d 1033, 1050 (Mass. 2021), did not hold that a rideshare consumer would not expect any terms. *See Good* v. *Uber Techs., Inc.*, 234 N.E.3d 262, 276 (Mass. 2024) (finding reasonable inquiry notice even though the plaintiff "may not have expected to be entering … a contract comprising the comprehensive set of terms offered by Uber"). Nor does Carroll's testimony that he idiosyncratically ignores all text messages rebut the argument that a reasonable customer would be on notice. Resp.Br.26. Plaintiffs rely on dicta in *Bean* v. *Perdue*, 316 F.Supp.3d 220, 228 (D.D.C. 2018), but that case recognized only a split in authority over whether "mere denial of receipt" is sufficient to create a material factual issue about whether a communication was sent.

Plaintiffs cite three cases to assert (Resp.Br.23) that an "unexpected email or text message of which the consumer was unaware" cannot create notice. But in those cases, there was no *objective* reason for the consumer to expect a message. In *Wilson* v. *Redbox Automated Retail, LLC*, 448 F.Supp.3d 873, 886 (N.D. Ill. 2020), the defendant failed to prove that the consumer ever agreed to terms in the first place, so there was no reason to expect an email *update*. In *Freitas* v. *Cricket Wireless, LLC*, No. 19-cv-7270, 2022 WL 1082014, at *6 (N.D. Cal. Apr. 11, 2022), defendants sought to compel thousands of class members to arbitrate but failed to prove that the text message containing the terms was sent to each member. And in *Towns* v. *West Creek Financial, Inc.*, No. 22-cv-1757, 2023 WL 7490007, at *5–7 (E.D. Cal. Nov. 13, 2023), a customer leasing furniture in person was not told (and did not expect) that the terms would be sent to her by email instead of presented directly to her by the sales clerk. Plaintiffs also cite (Resp.Br.26) *Estate of Fulton* v. *Fulton-Jones*, 287 A.3d 253 (D.C. 2023), to contend that Uber needed to show Carroll's actual notice of the message, but in that case there was no evidence the party had even been *sent* the agreement. *Id.* at 261.

Uber cited authority (Uber.Br.27–28) confirming that text messages and emails can provide sufficient inquiry notice for contract formation. Plaintiffs try to distinguish those cases (Resp.Br.26–27) by arguing that they all involved evidence of the text or email being opened and read. Those cases did not rely on that fact, and they did not create a spe-

cial text-and-email carveout to inquiry notice. Regardless, Plaintiffs are wrong that all those cases involved the message being actually opened. For example, in *Starkey*, 796 F.3d at 196, and *Macasero* v. *ENT Credit Union*, 533 P.3d 982, 987 (Colo. App. 2023), the evidence was only that the communication was *received*. There is no legitimate question of receipt here.[2]

Plaintiffs argue (Resp.Br.24) that the text message should be analogized to a "browsewrap" user interface. But there is no special browsewrap test; browsewrap agreements, like other electronic agreements, are analyzed for inquiry notice and enforced when notice of the terms and their manner of acceptance is reasonably conspicuous. *E.g.*, *Domer* v. *Menard, Inc.*, 116 F.4th 686, 694–695 (7th Cir. 2024); *Starkey*, 795 F.3d at 197 n.3 (noting that interface the court approved was *not* a clickwrap). Plaintiffs assert (Resp.Br.24–25) that no D.C. court has enforced a browsewrap agreement, but they identify no D.C. court rejecting one. Where that issue has arisen elsewhere, courts uphold browsewrap agreements if, as here, a "reasonably prudent" user "would have seen" the linked terms. *Patrick* v. *Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024).

---

[2] Plaintiffs call (Resp.Br.27) Uber's message "unsolicited," but Cheryl Walker solicited the message about the details for Carroll's ride when she requested that ride for him.

### B. The bright-blue link in the text message sent to Mr. Walker close in time to his ride objectively provided conspicuous notice.

The text message that Uber sent Carroll presented the Terms clearly and conspicuously in a short, informative message delivered before the ride, linked in bright blue: "Your Uber from Cheryl is arriving in 10 minutes. By taking this trip, you agree to the Uber Terms of Use & Privacy Policy: t.uber.com/lgl." JA093 ¶ 17; JA161; Uber.Br.25–27, 29–32. Plaintiffs' contention (Resp.Br.29–36) that the terms were unclear and inconspicuous is unsupported by law.

Plaintiffs do not meaningfully dispute that a reasonable person would have adequate notice of Uber's Terms from that message. Instead, Plaintiffs contort the evidence to dispute how the message would have appeared on Carroll's phone—an argument they never raised below in opposing the motion to compel. Plaintiffs disputed other facts, like the appearance of the app interface on *Cheryl's* phone, but not the appearance of the *messages* on Carroll's phone. *See* JA243–245, JA267. Plaintiffs argue that the "only evidence" Uber submitted was paragraph 17 of the Gaddis declaration, and that it did not evince how the text would appear on Carroll's phone. Resp.Br.29–30. But Uber also presented evidence that the message would show up with conspicuous formatting, JA093 (declaring presence of "bright blue underlined hyperlink"), and represented without contradiction that the message would appear without the "\n"

characters, *see* JA065, JA076 (presenting normal type); *see also* JA338–339. Plaintiffs cite (Resp.Br.30) dicta in *Bazemore* v. *Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016), to assert that Uber needed more evidence of "how the text message looked," but that case turned on the failure to submit any evidence at all that the plaintiff had agreed to a contract or the terms of that contract. *Id.* at 1327–1328, 1331.

Plaintiffs speculate (Resp.Br.32) that some phones don't display web addresses as clickable links, and they fault Uber for not proving "the type of phone" Carroll had. That speculation is unsupported by the record. Plaintiffs obviously knew what phone Carroll had, and would have proffered that evidence if it were helpful to them. Mere surmise cannot establish a material issue of fact. *See United States* v. *Dynamic Visions Inc.*, 971 F.3d 330, 336–337 (D.C. Cir. 2020).[3] Plaintiffs' argument (Resp.Br.30–31) that Uber's message was a "mishmash of words, symbols, letters, and numbers" is similarly contradicted by the record. Uber presented evidence of the message's appearance, JA093, and Plaintiffs chose not to contradict it.

---

[3] Plaintiffs contend (Resp.Br.32) that "a link is useless" on "a phone with no internet access," but never suggested Carroll lacked access. Plaintiffs also cite dicta in *Selden* referencing the type of phone and a lack of scrolling. Resp.Br.32 (citing 4 F.4th at 157). But neither was dispositive. *Selden* also relied on the hyperlink's being colored and instructing the user how to manifest assent—like here. 4 F.4th at 157.

Plaintiffs contend (Resp.Br.32–33) that, even if the link was blue, the "extraneous letters and symbols" and another link made it hard to notice. But no case supports that. Quite the opposite: *Selden* held a link conspicuous because it was colored and next to language mentioning the terms of use—even where it was one of multiple links. 4 F.4th at 152, 157. The record here is similar. Plaintiffs call (Resp.Br.30–32) it "pure speculation" and "without support" that the link was blue. Not at all. Two declarants testified to that. JA089, JA093; JA359; JA356. Plaintiffs never disputed it—let alone proffered contrary evidence—despite Uber asserting it repeatedly. JA065, JA077, JA083, JA093, JA343, JA344, JA345, JA346, JA359. Regardless, "[r]easonable notice does not turn on where the hyperlinked text falls on the color wheel." *Selden*, 4 F.4th at 157.

Plaintiffs' argument that the link to the terms was insufficiently conspicuous is hard to square with *any* view of how the message looked—whether the link was blue or not, and even whether the \n symbols appeared or not. Even Plaintiffs' version of the message is short, and the link is in the second sentence—*before* the critical information identifying the car and driver. *See* Resp.Br.7. Plaintiffs cite cases in which the existence of terms was deemed not conspicuous, but they rejected notice either (1) based on unclear or misleading *wording*, *Carter* v. *Ralph Lauren Corp.*, 683 F.Supp.3d 400, 414 (S.D.N.Y. 2023); (2) because the link did not look like a link, *Cullinane* v. *Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018); or (3) because the website buried the link at the very bottom

of the page, *Specht* v. *Netscape Commc'ns Corp.*, 306 F.3d 17, 24–25, 31–32 (2d Cir. 2002); *Hines* v. *Overstock.com, Inc.*, 668 F.Supp.2d 362, 367 (E.D.N.Y. 2009). Plaintiffs identify no case in which a blue link near the beginning of a short message was deemed insufficiently conspicuous, and they do not challenge the message's wording.

Critically, Plaintiffs do not deny that they never raised the district court's "preview screen" theory. Resp.Br.34–35. Nor do they attempt to argue that the theory has any support in case law. Plaintiffs try to minimize (Resp.Br.35) that unfairness to Uber by reasoning that Uber had the overall burden, but the party-presentation principle considers whether the court waded into issues that were not presented, like here. Plaintiffs give no reason the burden would matter. Courts' "rel[iance] on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present" is burden-agnostic. *United States* v. *Sineneng-Smith*, 590 U.S. 371, 375 (2020). Indeed, the principle has been applied in favor of a party with the burden. *See, e.g.*, *id.* at 374–376 (principle applied in favor of prosecution on appeal from conviction); *Maalouf* v. *Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019) (warning against courts "*sua sponte* rais[ing] affirmative defenses").

*

Amici contend (AAJ.Br.3–13) that the text message did not provide notice, but the crux of their argument is that the district court should

have adopted a more-complicated test that no one suggested. Amici argue (AAJ.Br.7–9, 13) that the "nature of the transaction" must be considered, but that *supports* Uber here. Unlike amici's examples (AAJ.Br.9) of a sock purchase or free consultation, Uber's services involve a multisided platform that connects independent drivers and riders to enable transportation to a specific requested place. Carroll surely knew that his driver was obligated to go to his requested destination; it is unreasonable to think that no obligations went the other way.

### C. Carroll was told that taking a ride meant agreeing to the Terms, and he manifested his assent by doing so.

Regardless of Carroll's *subjective* intent, he *objectively* manifested intent when he took a ride after being informed (i) of his specific driver and car, (ii) that the ride was subject to Uber's hyperlinked terms, and (iii) that, by taking the ride, he agreed to those terms. Uber.Br.23–28.

Plaintiffs do not dispute that a party can assent through conduct. *See* Resp.Br.36–37. Nor do they dispute that, if Carroll had notice, then he *did* manifest assent by taking the ride. *Id.* Instead they argue that Carroll did not have "actual notice" that taking the ride "would bind him." *Id.* at 36. But as discussed above, the law does not require actual notice. Plaintiffs' own cited case held that assent may be manifested when the party "*has reason to know* that the other party may infer" assent from conduct. *Camara* v. *Mastro's Restaurants LLC*, 952 F.3d 372, 375 (D.C.

Cir. 2020) (emphasis added). Uber explained (Uber.Br.24–25) that assent by conduct considers "reasonable people in the position of the parties," not their peculiar practices like supposedly never reading text messages. The text message gave Carroll "reason to know" that Uber would "infer from his conduct that he assent[ed]" to the Terms because it coupled the Terms with an instruction. *Camara*, 952 F.3d at 375.

Plaintiffs contend (Resp.Br.36) that "nothing about the act of riding in an Uber, standing alone, indicated that it was binding Carroll to a contract." The opposite is true. Carroll was not entering a friend's car; he was traveling with an independent contracted driver with whom his wife connected using Uber's services, and who would not have transported him but for those services. Plaintiffs rely on *Marshall* and *Kauders*, but neither holds that the assenting action must be considered "standing alone" (Resp.Br.36) apart from accompanying communications. Courts "consider the totality of the circumstances." *Kauders*, 159 N.E.3d at 1051; *Marshall* v. *Georgetown Mem'l Hosp.*, 112 F.4th 211, 222–223 (4th Cir. 2024) (explaining that "I accept" button coupled with language that button would manifest acceptance would be "clear and conspicuous notice").

### D. The district court abused its discretion in denying reconsideration.

**1.** Even assuming that Rule 59 applied below, the district court abused its discretion when it rejected Uber's reconsideration evidence. Uber.Br.36–37.

It was clear error resulting in manifest injustice for the district court to rely on arguments about how the text message appeared that no one raised and to deny Uber an opportunity to respond. *See Maalouf*, 923 F.3d at 1109. Uber could not have predicted a legal conclusion no one argued. Plaintiffs contend (Resp.Br.39–40) that it was not error to draw inferences from Uber's evidence. But the problem was not that the court drew inferences; it was that those inferences were unreasonable and untethered to any argument the parties made. Plaintiffs argue (Resp.Br.40–41) that Uber never argued that the unformatted SMS code "was not a true representation of what was sent to Carroll." That is false. Uber's brief repeatedly presented the appearance of the text "in normal type" without the \n characters and noted the "bright blue text." JA065, JA076–077. Uber had no reason to think the appearance of the message was in doubt. The affidavit made clear that the message bore formatting. JA093 ¶ 17. And if the message appeared another way, Carroll was in the best position to dispute that—but he did not.

Plaintiffs contend (Resp.Br.41) that Uber's reconsideration evidence like the clarifying screenshot would make no difference, but that is meritless. Plaintiffs are wrong to suggest (Resp.Br.40) that Uber "has no idea what the text message looked like on Carroll's phone." Uber's data scientist attested that Uber's data log contains "certain formatting instructions that the user would not see directly but are instead interpreted by the user's phone to format the message," and attached a repre-

sentation of "how the text messages … would typically appear on a phone screen" once those formatting instructions were read by the phone. JA359 ¶ 11. In opposing reconsideration, Plaintiffs did not rebut that testimony. Nor did Plaintiffs provide any reason to think that some phones cannot format "instructions for starting a new line of text" or display clickable hyperlinks. *Id.* In all events, the new evidence explaining the \n characters put to bed the district court's "mishmash" misconception upon which its decision rested.

**2.** Regardless, Rule 59 was the wrong standard, and Plaintiffs do not show otherwise. They argue (Resp.Br.37–39) that the denial was a "judgment" because it was an "order from which an appeal lies." But the question for Rule 59 purposes is not whether the denial was a "judgment"—it is whether a judgment was "entered." *Cobell* v. *Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015); Uber.Br.35–36. Entry of judgment requires a separate document. Fed. R. Civ. P. 58(a); *Abdulwali* v. *WMATA*, 315 F.3d 302, 304 (D.C. Cir. 2003). Plaintiffs argue (Resp.Br.39) that the order in *Cobell* was "found not to be appealable, meaning [it] did not meet the plain definition of a 'judgment,'" but that was not *Cobell*'s reasoning, which instead considered whether the district court's ruling had yet been sufficiently finalized into an *entered judgment* after being made orally. *See* 802 F.3d at 25. Plaintiffs contend (Resp.Br.38–39) that *Abdulwali* recognized an unentered order to be appealable, but appealability is not the issue. *Abdulwali* considered at what point "the judgment … appealed

from is *entered*." 315 F.3d at 303 (citing Fed. R. App. P. 4(a)(1)(A)) (emphasis added). The judgment here was not *entered* until it appeared as a separate document. *Id.*; Fed. R. Civ. P. 58. Under *Abdulwali* and *Cobell*, the entry date controls—so before the judgment is *entered*, Rule 54 applies. *Abdulwali*, 315 F.3d at 303; *Cobell*, 802 F.3d at 25. Plaintiffs cite *Marie* v. *Allied Home Mortgage Corp.*, 402 F.3d 1, 7 (1st Cir. 2005), and *General Association of Regular Baptist Churches* v. *Scott*, 549 F. App'x 531, 534 (7th Cir. 2013), but neither presented the situation in *Cobell* where the judgment had not yet been entered under Rule 58.[4]

Plaintiffs are also wrong that Uber forfeited any argument. The choice-of-standard issue was raised: Uber advocated for Rule 54. JA339–340; JA389–390. When Plaintiffs responded that the denial was an order "from which appeal lies," Uber contested that was sufficient to invoke Rule 59. JA389–390. Uber had a legitimate expectation that the district court would adhere its own precedent and apply Rule 59. JA339–340 & n.4 (citing *Kelleher* v. *Dream Catcher, L.L.C.*, 263 F.Supp.3d 253, 254 (D.D.C. 2017), *aff'd*, 729 F. App'x 4 (D.C. Cir. 2018)). In all events, the choice of standard is a pure legal issue reviewed de novo, and an appel-

---

[4] Plaintiffs observe (Resp.Br.38) that Uber filed an appeal despite the lack of a separately entered judgment, but Uber did that out of caution in view of the jurisdictional notice-of-appeal window. Filing the notice before entry was proper, as the Rules treat an appeal filed "after the court announces a decision or order—but before the entry of the judgment or order … as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2).

lant is permitted to elaborate on reasons in support of its position below. *Yee* v. *City of Escondido, Cal.*¸503 U.S. 519, 534 (1992) ("[P]arties are not limited to the precise arguments they made below."); *Koch* v. *Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007).

Plaintiffs are also wrong (Resp.Br.41–42) that Uber advanced no argument why the district court erred under Rule 54(b). Uber explained that Rule 54(b) is more lenient than Rule 59 regarding new evidence, Uber.Br.35, and why the new evidence should have changed the result, Uber.Br.37–40. The district court recognized that Rule 54(b) is more forgiving, and its analysis under Rule 54(b) addressed that evidence on its merits—necessarily premised on the idea that it would not have rejected it under Rule 54(b). JA409–414.

## II. Mr. Walker's claims are arbitrable under traditional contract-law principles applicable to non-signatories.

### A. An arbitration agreement is enforceable in D.C. where a non-signatory received the benefit of the contract.

D.C. law permits enforcing an arbitration agreement against a non-signatory who sought the benefit of the contract. Uber.Br.40–44. Plaintiffs acknowledge that courts have recognized that third-party beneficiaries may be compelled to arbitrate. Resp.Br.46 n.6; *see also Jahanbein* v. *Ndidi Condominium Unit Owners Ass'n*, 85 A.3d 824, 830–831 (D.C. 2014) (recognizing that a third-party beneficiary can be bound, but finding no beneficiary status on those facts). Plaintiffs argue that a contract

cannot "bind a non-signatory simply because they are a third-party beneficiary." Resp.Br.44 (emphasis omitted). But Uber is not asking this Court to hold that *simply* being a third-party beneficiary is enough. This arbitration agreement is binding against Carroll because he sought and obtained the benefit of Uber's services. None of Plaintiffs' cited cases speaks to that situation.

Plaintiffs invoke (Resp.Br.44–45) three main cases, but none supports their proposed bright-line rule. None considered an argument that the third party was bound as a beneficiary who sought the benefit of the contract. In *Guttenberg* v. *Emery*, 41 F.Supp.3d 61, 68 (D.D.C. 2014), no one argued that the non-signatory was a third-party beneficiary. In *Jones* v. *Quintana*, 872 F.Supp.2d 48, 57–58 & n.3 (D.D.C. 2012), the contract was drafted to *exclude* the third party. And in *Bradley* v. *NCAA*, 249 F.Supp.3d 149, 178–179 (D.D.C. 2017), there was no evidence of intended third-party benefit. In Plaintiffs' other cases, the non-signatories were *incidental* beneficiaries, not intended beneficiaries, *e.g.*, *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008), or the case did not present third-party beneficiary issues, *e.g.*, *Charlton* v. *Mond*, 987 A.2d 436, 437, 441 (D.C. 2010). None of those cases is at odds with permitting a signatory to enforce an agreement against an intended third-party beneficiary like Mr. Walker who sought the benefit of Cheryl's agreement with Uber.

Amici contend (AAJ.Br.14–20) that Uber's position would "radically expand" the third-party beneficiary doctrine. But it cannot "radically expand" the doctrine to apply it in a way that courts applying D.C. law—like *Oehme*, *Mariano*, and *Jahanbein*—already recognize. Uber.Br.42.

### B. Plaintiffs' forfeiture argument ignores Uber's consistent argument that Carroll sought the benefit of his wife's agreement.

Plaintiffs' forfeiture argument (Resp.Br.47–50) ignores Uber's consistent argument that Carroll deliberately sought the benefit of his wife's agreement with Uber. Plaintiffs argue that Uber forfeited its third-party argument by not reciting the words "equitable estoppel," but Uber's substantive point has been consistent all along: Carroll sought the benefit of a contract to which he was an intended third-party beneficiary. Uber.Br.44–47; JA083. In similar situations, courts applying traditional contract principles have not hesitated to bind beneficiaries to arbitration provisions of the accountholder. *E.g.*, *Hartenstine* v. *Uber Techs., Inc.*, 753 F.Supp.3d 1, 4–5 (D.D.C. 2024). What matters is the position Uber advanced, not its precise label.

Plaintiffs' argument also rests on the false premise that there is a clear and consistent delineation between third-party beneficiary and estoppel arguments. In fact, courts regularly discuss the doctrines with overlap or even interchangeably, and for good reason—they share the key point that a non-signatory who seeks the *benefit* of a contract also takes

its *obligations*. *See, e.g.*, *Nguyen* v. *Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (discussing "appl[ication of] equitable estoppel to third-party beneficiary of insurance contract"); *Harvey ex rel. Gladden* v. *Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 268 n.38 (Tenn. 2017) (explaining the confusion in terminology and recommending "third party beneficiary" as the better label for what is sometimes called "equitable estoppel"); *Patel* v. *Regions Bank*, 808 F. App'x 242, 245–246 (5th Cir. 2010) (calling the two "fraternal twin[s]"). The distinction between the two doctrines is so thin that it cannot give rise to forfeiture.

Insofar as the cases draw a distinction, they confirm that Uber here advocated a third-party beneficiary estoppel theory. For example, *Oehme, van Sweden & Associates, Inc.* v. *Maypaul Trading & Services Ltd.* classified the doctrines by whether the conduct occurred before or after executing the contract. 902 F.Supp.2d 87, 100 (D.D.C. 2012). Uber has consistently cited conduct after Cheryl accepted the Terms. JA083–084.

Plaintiffs sow confusion by citing differences between the third-party beneficiary doctrine and *common-law equitable estoppel*. But what the cases call "equitable estoppel" of third-party beneficiaries is a different doctrine than common-law equitable estoppel from misrepresentations. *See Harvey*, 532 S.W.3d at 268 n.38 ("[T]his principle is distinct from the common law principle of equitable estoppel, under which a party who has made a false or misleading representation of fact may be estopped from later asserting inconsistent facts.").

Regardless, this Court need not get into academic hairsplitting because everything Uber argues is proper. The same issue was presented below: whether Carroll is bound as a non-signatory intended beneficiary who sought the contract's benefit. The district court decided that issue. The standard of review is de novo. The issue is legal. And an appellant may raise new cases and arguments in support of a claim advocated below, *Yee*, 503 U.S. at 534, and cite "additional support for his side of an issue upon which the district court did rule, much like citing a case for the first time on appeal," *Koch*, 489 F.3d at 391. A party does not "forfeit[ an] argument by not raising it in district court" if the new argument is not "a standalone … challenge" but "another argument" supporting an existing claim. *Jazz Pharms., Inc.* v. *Kennedy*, 141 F.4th 254, 265–266 (D.C. Cir. 2025) (no forfeiture of statutory-interpretation argument not raised below); *Clarian Health West, LLC* v. *Hargan*, 878 F.3d 346, 358 (D.C. Cir. 2017) (new argument that instructions were within "general policy statement exception" to notice-and-comment rulemaking was not forfeited because it was "within the scope of the argument it made below that the instructions were procedurally valid").[5]

---

[5] Plaintiffs cite *Apprio, Inc.* v. *Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024), and *Jones Lang LaSalle Americas, Inc.* v. *NLRB*, 128 F.4th 1288, 1297 (D.C. Cir. 2025), but neither case is implicated here. In *Apprio*, the appellant presented a brand-new set of arguments about how a contract should be interpreted and certain source code classified, invoking a new

### C. Carroll was an intended beneficiary who sought to benefit from his wife's agreement with Uber.

**1.** Carroll was an intended third-party beneficiary of the contract between his wife and Uber. Uber.Br.44–47. The contract covered third parties and *any* use of the Uber Services, and Cheryl requested and paid for a ride using the Services.

Plaintiffs do not dispute that Cheryl repeatedly used Uber's services to request rides for Carroll. Nor do Plaintiffs dispute that she would not have been able to order those rides but for her agreement with Uber. Plaintiffs attempt to cast this obvious benefit that Carroll obtained from the agreement as merely incidental, but Uber's services would not be as popular were Uber to prohibit users from sharing their rides with guests. The ability of a registered user to arrange rides for both herself and her loved ones is one important benefit arising from the Terms.

Plaintiffs acknowledge that other courts have concluded that requesting a ride entails seeking the benefits of the accountholder's contract, but try to distinguish those cases "on their facts." Resp.Br.55 n.14. No distinction holds. For *Hamilton* v. *Uber Technologies, Inc.*, No. 22-cv-6917, 2023 WL 5769500, at *5 (S.D.N.Y. Sept. 7, 2023), Plaintiffs contend

---

statutory section. Here, Uber presents the same nucleus of facts and overall theory. In *Jones*, the appellant switched legal standards between its opening and reply briefs, depriving the appellee of the ability to respond. Uber here presented its cases and theory in its opening brief, and Plaintiffs responded on the merits. Resp.Br.58–60.

that the guest rider previously created his own account, but that is irrelevant to whether he sought the benefit of someone else's agreement after the "suspension" of his own. For *Hughes* v. *Uber Technologies, Inc.*, 718 F.Supp.3d 571, 582 (E.D. La. 2024), Plaintiffs contend that the terms in that case "contained express references to guest riders." Resp.Br.55 n.14. But so do the Terms here. *Compare Hughes*, 718 F.Supp.3d at 582 & nn.40, 41 (citing reference in Terms of Use to unaccompanied minor guests), *with* Uber.Br.46 (same). In *Hartenstine*, it did not matter that the guest rider had his own Uber account—that case expressly decided that the ride was governed by the father's Terms of Use (to which the guest-rider son never agreed), not the son's. 753 F.Supp.3d at 4. That is because the son "accepted the benefits of his father's contract with [Uber] by entering" the vehicle. *Id.* at 5. Just so here: Carroll accepted the benefits of his wife's contract with Uber—which benefits included Cheryl's ability to request a ride for Carroll.

Uber's brief explained (Uber.Br.46–47) that the language of the Terms also confirms Carroll's intended third-party beneficiary status.

*First*, Plaintiffs concede that the Terms "explicitly mention third parties," Resp.Br.54, but say this does not matter because some terms do not reference parties. They cite *Guam Industrial Services, Inc.* v. *Rumsfeld*, 441 F.Supp.2d 21, 26 n.7 (D.D.C. 2006), but *Guam* said nothing on this point; the plaintiff there failed to address third-party beneficiary status. Regardless, the whole Terms benefit guest riders like Carroll, who

can obtain transportation using Uber's Services. Express reference to a third-party beneficiary is not required. *Hossain* v. *JMU Properties, LLC*, 147 A.3d 816, 820 (D.C. 2016) (third-party beneficiary status may be inferred from "the circumstances of the contract").

*Second*, Plaintiffs insist (Resp.Br.54–56) that the Terms "only purport[] to bind, not benefit, spouses." But Uber explained (Uber.Br.49) that the *bilateral* arbitration agreement both binds and benefits all parties—including Uber. To get around this, Plaintiffs speculate that "any claims against [Carroll] by Uber are unlikely to arise out of Cheryl's agreement with Uber or … use of Uber's services." Resp.Br.56. But a claim by Uber against a guest rider—say, for vandalizing a driver's vehicle—would of course arise out of the accountholder's use of the services, because the accountholder requested the ride. JA123.

*Third*, Plaintiffs contend (Resp.Br.52) that guest rides are not a covered "Service" and therefore not a direct benefit. Plaintiffs did not make that claim below. And the Terms unambiguously cover guest rides because they expressly extend to *all* use of Uber's services. *See* JA122 (Terms § 1); JA123 (Terms § 2(a)).

**2.** Carroll sought the benefit of the contract when he took the ride. Plaintiffs insist (Resp.Br.57–58) that Carroll was entitled to "reject a promised benefit" and did so by "choosing to litigate in court." But Carroll cannot reject a benefit that he already accepted—the ride—any more than a restaurant diner can eat his meal and then "reject the benefit"

once the waiter brings the check. Plaintiffs cite *Jacks* v. *CMH Homes, Inc.*, 856 F.3d 1301, 1305 (10th Cir. 2017), but defendants there "concede[d] that the nonsignatory plaintiffs [were] not third-party beneficiaries of the contract as a whole" and so there was no possible benefit to accept.

As Uber explained (Uber.Br.49–50), multiple courts have easily concluded that taking a ride requested through the App means seeking the benefit of the Terms. Plaintiffs argue that those equitable-estoppel cases "don't concern third-party beneficiary doctrine." Resp.Br.58. But that distinction in nomenclature is illusory, *supra* Section II.B, and regardless, Plaintiffs give no reason why taking a ride should count as seeking a benefit in one context but not the other.

Plaintiffs concede (Resp.Br.58–59) that D.C. law can bind nonsignatories who seek direct benefits from a contract, seek to enforce its terms, or assert claims decided by reference to it. Apart from Carroll seeking the benefit of the contract, he asserts claims here that are rooted in that contract. Uber.Br.46–47. Plaintiffs argue (Resp.Br.59–60) that a "but for" link between a contract and claims is insufficient. But Uber does not merely invoke a but-for link; the contract *here* allegedly created the very duties that Plaintiffs rely on to plead their personal-injury claims against Uber. Uber.Br.46–47.

## CONCLUSION

This Court should reverse the denial-in-part of Uber's motion to compel arbitration.

Dated: October 15, 2025

Respectfully submitted,

*__/s/ Michael R. Huston__*
Michael R. Huston
PERKINS COIE LLP
2525 East Camelback Road,
Suite 500
Phoenix, AZ 85016
Telephone: 602.351.8000
MHuston@perkinscoie.com

*Attorneys for Uber Technologies, Inc., Rasier, LLC, and Rasier-DC, LLC*

Jacob Taber
PERKINS COIE LLP
1155 Sixth Avenue, 22nd Floor
New York, NY 10036

Jonathan I. Tietz
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 800
Washington, D.C. 20005-3960

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. As measured by the word-processing system used to prepare this brief, the brief contains **6,479** words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), and complies with the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a 14-point proportionally spaced roman-style typeface (Century Schoolbook).

Date: October 15, 2025

*/s/ Michael R. Huston*
Michael R. Huston

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: October 15, 2025

*/s/ Michael R. Huston*
Michael R. Huston